Russell G. Wheeler (RW 8995)
Charny & Wheeler
9 West Market Street
Rhinebeck, New York  12572
Tel - (845) 876-7500
Fax - (845) 876-7501
rwheeler@charnywheeler.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORRAINE DE JESUS-HALL,

                                        Plaintiff,

         v.                                                    COMPLAINT

NEW YORK STATE UNIFIED COURT SYSTEM,          Index No.

                                        Defendant.          ELECTRONICALLY FILED

         Plaintiff Lorraine DeJesus-Hall, by and through her counsel Charny & Wheeler, brings

this Complaint and in support thereof states as follows.

### NATURE OF THE ACTION

         1.        This is an action for damages and other relief under Title VII of the Civil Rights

Act of 1964 (herein Title VII) based on Defendant's unlawful discrimination taken against

Plaintiff on the basis of her race and national origin and Defendant's retaliation taken against

Plaintiff because she advocated for herself in connection with her race and national origin.

### JURISDICTION AND VENUE

         2.        This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, this

action arising under laws of the United States. Plaintiff's claims are brought under Title VII of

the Civil Rights Act of 1965, 42 U.S.C. § 200e-2 et seq.

         3.        Venue is proper in that Plaintiff and Defendant reside within this District.

PARTIES

4.        Plaintiff Lorraine DeJesus-Hall (herein Plaintiff) is a female Hispanic of Puerto

Rican ancestry, currently residing in Orange County, New York.

5.        Defendant New York State Unified Court System (herein Defendant) is the

judicial branch of the Government of the State of New York, comprising and charged with the

operation of the courts of the State of New York.  At all times relevant herein, courts comprising

and operated by Defendant included courts located in Orange County, New York.

FACTS

6.        In or about March 1999, Plaintiff began employment with Defendant as a Court

Officer.  From in or about November 2010 to the present, Plaintiff has held the title of Senior

Court Clerk.

7.        At all times relevant herein, Plaintiff worked in the Supreme, County or Family

Court comprising and operated by Defendant in Orange County, New York.

8.        At all times relevant herein, Plaintiff was the only Hispanic Senior Court Clerk

assigned to the Orange County Supreme, County or Family Court.

9.        At all times relevant herein, except as otherwise alleged, Plaintiff was supervised

by Chief Clerk of the Supreme and County Courts Lynn McKelvey.  Prior to May 2013,

McKelvey held the title of Deputy Clerk of the Family Court.

10.        At all times relevant herein, McKelvey was authorized to and in fact did

undertake tangible employment decisions affecting Plaintiff, including to hire, fire, promote and

reassign Plaintiff.  At all times relevant herein, McKelvey was authorized and in fact did direct

Plaintiff's daily work activities.

11.        From in or about November 2010 to November 2011, Plaintiff was assigned as a

probationary Senior Court Clerk to the Family Court, Orange County.

12.     During Plaintiff's assignment to the Family Court, McKelvey routinely disparaged Plaintiff's communication skills as a non-white Hispanic of Puerto Rican ancestry, by claiming that nobody could understand her writing and by inquiring if English was Plaintiff's second language.  McKelvey also advised Plaintiff that the mere fact that she had passed the New York State Senior Court Clerk examination did not mean that she was capable of being a Senior Court Clerk and that "not everyone is meant to be a clerk."

13.     During the majority of Plaintiff's assignment to Family Court, McKelvey also continuously rotated her from assignment to assignment, which interfered with Plaintiff's ability to learn the procedures and operations attendant to Family Court and to form relationships with courtroom staff and judges.

14.     Upon information and belief, Plaintiff was the only Senior Court Clerk withih the Orange County Family Court to be rotated from assignment to assignment in the manner as described above.

15.     At no point during her tenure in Family Court was Plaintiff ever advised by a judge, law clerk or other courtroom staff that her work performance was substandard or that she had otherwise failed to fulfill her duties and responsibilities as a Senior Court Clerk in such assignment.

16.     In or about November 2011, McKelvey and Holbrook attempted to prevent Plaintiff from becoming permanent in the title of Senior Court Clerk and sought to terminate her from such position by recommending that she be deemed to not have satisfactorily completed her probationary period.

17.     McKelvey and Holbrook attempted to terminate Plaintiff without the

authorization of the Supervising Judge, who was on leave at the time.

18.    When the Supervising Judge refused to approve Plaintiff's termination as recommended by McKelvey and Holbrook, Plaintiff was eventually assigned to the Criminal Division.

19.    Following her placement in the Criminal Division, Plaintiff was assigned to serve as a back-up clerk to all three (3) Orange County Court parts.

20.    In or about May 2013, McKelvey became Supreme Court Chief Clerk.  In or about May 2014, and after completion of her probationary period, McKelvey began rotating Plaintiff to various part assignments within the Criminal Division, including the Integrated Domestic Violence (IDV) part, and stripped Plaintiff of work assignments that had been previously given to her.

21.    In or about June 2014, after observing Plaintiff's work performance in the IDV part, Plaintiff's immediate supervisor advised McKelvey that Plaintiff was sufficiently trained and capable of working independently in the IDV part.

22.    Plaintiff's supervisor recommended to McKelvey that Plaintiff be assigned to the IDV part, a Part Clerk assignment.

23.    Thereafter, Plaintiff worked in the IDV part for a period of approximately one month (comprising four (4) one day shifts) before being removed from the assignment by McKelvey.  At no point during Plaintiff's approximately one (1) month tenure in the IDV part was she ever advised that her work performance was substandard or that she was otherwise failing to fulfill her duties and responsibilities as a Senior Court Clerk in such assignment.

24.    After removing Plaintiff from the IDV part assignment, McKelvey assigned another employee of Puerto Rican descent who was of a higher title and salary grade and had

previously expressed to her that she did not wish to be assigned to perform the lower title assignment of Senior Court Clerk within the IDV part.

25.     In or about December 2014, a vacancy opened for a Senior Court Clerk assignment in the courtroom of a Supreme Court judge in the Civil Division of the Orange County Supreme Court.

26.     In or about December 2014, Defendant assigned a non-Hispanic white male with six (6) months of experience as a Senior Court Clerk to the position, over Plaintiff who at the time had more than four (4) years of experience as a Senior Court Clerk.

27.     Prior to such assignment, Part Clerk assignments in Orange County had been made solely on the basis of seniority and experience.  Following the assignment to the vacant Part Clerk position of the non-Hispanic white male with less seniority and experience than Plaintiff in or about December 2014 as described above, Plaintiff advised Defendant that she was interested in and wished to be assigned to any future Part Clerk vacancies in the Orange County Supreme, County or Family Court.

28.     In or about January 2015, Plaintiff filed an internal complaint of race and national origin discrimination with Defendant's Office of the Managing Inspector for Bias Matters, alleging that she had been passed over by Defendants for assignments in favor of white non-Hispanic employees and that Defendant had a bias employing non-white minority clerks in the Orange County courts.

29.     In or about February 2015, Plaintiff was summoned to a meeting with McKelvey and a Deputy Chief Clerk and advised that Plaintiff would be required to obtain authorization prior to using the clerks' dining room to host a luncheon with other court employees.  McKelvey specifically instructed Plaintiff to provide her with a list of dates on which she intended to use

the clerks' dining room.

30.     Upon information and belief, no other Senior Court Clerks under McKelvey's supervision required to obtain her permission or provide her with a list of dates prior to using the clerks' dining room.

31.     At the same meeting in or about February 2015, McKelvey advised Plaintiff that Defendant intended to assign a newly-hired non-Hispanic white employee to the IDV Part Clerk position.  Such employee had substantially less experience and seniority as a Senior Court Clerk than Plaintiff.

32.     Further, McKelvey advised Plaintiff that she would be required to train the newly-hired employee who Defendant intended to assign to the IDV Part Clerk Position.

33.     Thereafter, Defendant transferred Plaintiff to the IDV part for approximately thirty (30) days, after which Defendant removed Plaintiff from the IDV part.

34.     From in or about February 2015 until in or about July 2015, Plaintiff was the only Senior Court Clerk assigned to the Criminal Division back office.

35.     In or about July 2015, Defendant advised Plaintiff that it had determined her internal complaint of discrimination and harassment to be unsubstantiated.

36.      Thereafter, on or about July 27, 2015, McKelvey transferred Plaintiff from the Criminal Division, where she had worked for the previous four years, to the foreclosure part within the Civil Division.

37.     Within the Orange County Supreme Court, the foreclosure part is not located in an actual courtroom and is presided over by an attorney referee rather than a judge, is considered less prestigious than judge's court parts and is less likely to lead to promotional or advancement opportunities for the court employees assigned to it.

38.     Prior to Plaintiff's transfer, the foreclosure part was staffed by a Court Clerk.

39.     Upon transferring Plaintiff to the foreclosure part, McKelvey assigned a newly-hired non-Hispanic white clerk with less seniority and experience than Plaintiff to staff Plaintiff's previous position in the Criminal Division.

40.     In or about June 2016, Plaintiff was assigned to a Part Clerk position in the Civil Division to replace a Clerk who had retired.

41.     Thereafter, Plaintiff worked as a Part Clerk for approximately two (2) weeks until she was required to take an approximately three (3) month medical leave of absence. At no point during Plaintiff's approximately two (2) week tenure in the Part Clerk assignment in the Civil Division was she ever advised that her work performance was substandard or that she was otherwise failing to fulfill her duties and responsibilities as a Senior Court Clerk in such assignment.

42.     During Plaintiff's medical leave of absence, McKelvey assigned a non-Hispanic white Senior Court Clerk from Westchester County to Plaintiff's Part Clerk assignment in Civil Division. Upon the conclusion of her medical leave of absence, Defendant did not permit Plaintiff to return to her Part Clerk assignment in the Civil Division and instead assigned Plaintiff back to the foreclosure part.

43.     Upon information and belief, Plaintiff is the only Senior Court Clerk under McKelvey's supervision to have been prohibited from returning to her previous position after a medical or other leave of absence.

44.     In or about October 2016, at or about the same time that Plaintiff returned from her medical leave of absence, a Senior Court Clerk assigned to a Civil Division part retired. McKelvey assigned the Senior Court Clerk who had replaced Plaintiff in the Criminal Division

when Plaintiff was transferred to the foreclosure part to staff the vacant Civil Division part assignment. Such employee, who was non-Hispanic white had substantially less experience and seniority than Plaintiff.

45.     In or about June 2017, Plaintiff learned of a vacant Senior Court Clerk part assignment in Orange County Court. When Plaintiff asked McKelvey about the vacant assignment, McKelvey stated that no vacant Senior Court Clerk part assignments existed in either Supreme or County Court.

46.     Thereafter, McKelvey hired a non-Hispanic individual of Filipino descent with substantially less seniority and experience than Plaintiff to staff a vacant Part Clerk assignment in Supreme Court.

47.     In July 2017, McKelvey removed the Senior Court Clerk from a part assignment in Supreme Court and offered to assign a Senior Court Clerk other than Plaintiff to the part. When the judge presiding over the part rejected the proposed replacement on performance grounds, McKelvey advised her that Plaintiff was the only other potential replacement, but that Plaintiff was unavailable due to her assignment to the foreclosure part. McKelvey resisted assigning Plaintiff to the vacant Part Clerk position until instructed otherwise by the justice.

<u>EEOC AUTHORIZATION TO FILE</u>

48.     On or about October 15, 2015, Plaintiff filed a charge against Defendant with the Equal Employment Opportunity Commission (EEOC) asserting claims of race and national origin discrimination and of retaliation for having engaged in a protected activity under Title VII, based upon the foregoing.

49.     On or about February 23, 2017, the EEOC issued a determination finding reasonable to cause to believe that Defendant violated Title VII.

50.     Therein, the EEOC found that Plaintiff's allegations of discrimination were corroborated by the statements of other Hispanic employees who claimed that they were subjected to many of the same abuses, retaliation and discriminatory practices.

51.     On or about November 15, 2017, the Department of Justice issued Plaintiff an Amended Notice of Right to Sue.

52.     Plaintiff received the Amended Notice of Right to Sue after November 15, 2017.

53.     Plaintiff brings this action within 90 days of the issuance of Notice of Right to Sue.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>
(Title VII – Discrimination and Disparate Treatment)

54.     Plaintiff repeats and reiterates each and every allegation in the preceding paragraphs as if set forth fully herein.

55.     By undertaking the foregoing, Defendant subjected Plaintiff to adverse-employment actions, including the deprivation of assignments and promotional opportunities, based upon Plaintiff's race and national origin.

56.     In so acting, Defendant violated Title VII of the Civil Rights Act of 1964.

57.     By undertaking the foregoing, Corporate Defendant has acted with malice or reckless indifference to Plaintiff's federally-protected rights.

58.     As a proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer substantial losses, including the loss of promotional opportunities and career advancement, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
(Title VII - Retaliation)

59.    Plaintiff repeats and reiterates each and every allegation in the preceding paragraphs as if set forth fully herein.

60.    By undertaking the foregoing, Defendant retaliated against Plaintiff by subjecting her to adverse employment actions because Plaintiff complained about having been discriminated against her on the basis of her race and national origin.

61.    In so acting, Defendant violated Title VII of the Civil Rights Act of 1964.

62.    By undertaking the foregoing, Corporate Defendant has acted with malice or reckless indifference to Plaintiff's federally-protected rights.

63.    As a proximate result of Defendant having retaliated against Plaintiff because she complained about having been discriminated against on the basis of her race and national origin, Plaintiff has suffered and continues to suffer substantial losses, including the loss of promotional and advancement opportunities and mental anguish and emotional distress in an amount to be proved at trial.

## JURY TRIAL DEMAND

64.    Plaintiff requests a jury trial in this matter.

WHEREFORE, Plaintiff requests judgment:

i.      Granting her actual damages in an amount to be determined at trial;

ii.     Directing Defendant to refrain from engaging or condoning discriminatory or retaliatory conduct against Plaintiff;

iii.    Granting Plaintiff equitable relief directing Defendant to maintain Plaintiff in a Part Clerk assignment within the Orange County Supreme or County Court;

iv.      Granting her compensatory damages in an amount to be determined at trial for the emotional distress suffered as a direct result of Defendant's discriminatory and retaliatory actions;

v.      Granting her costs, pre and post judgment interest, and reasonable attorney's fees and costs and

vi.      Granting her such other and further relief as seems just and proper to the Court.

Dated: Rhinebeck, New York
      February 12, 2018

_____
Russell G. Wheeler (RW 8995)
Charny & Wheeler
9 West Market Street
Rhinebeck, New York  12572
Tel - (845) 876-7500
Fax - (845) 876-7501
rwheeler@charnywheeler.com

Attorneys for Plaintiff Lorraine DeJesus-Hall

11