**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LORRAINE DE JESUS-HALL,

<strong>Plaintiff,</strong>

<em>- against -</em>

**NEW YORK STATE UNIFIED COURT SYSTEM,**

<strong>Defendant.</strong>

**18CV1241 (LMS)**

**DECISION AND ORDER**

**LISA MARGARET SMITH, U.S.M.J.[1]**

Plaintiff Lorraine De Jesus-Hall ("Plaintiff") brings this action against Defendant New York State Unified Court System ("Defendant"), asserting claims under Title VII of discrimination based on race and national origin and retaliation. Docket # 1 ("Complaint"). Currently before the Court is Defendant's motion for summary judgment (Docket # 35). For the reasons that follow, the motion is granted, and the action is dismissed.

## BACKGROUND

The following facts relevant to the Court's determination of this motion are undisputed unless otherwise noted and are taken from Defendant's Local Rule 56.1 Statement (Docket # 50) ("Def.'s 56.1"), Plaintiff's Response to Defendant's Statement of Material Facts (Docket # 46) ("Pl.'s Response"), and the evidence submitted by the parties in connection with the motion.

Plaintiff, a Latina of Puerto Rican ancestry, began her employment with Defendant as a Court Officer in March, 1999. Pl.'s Decl. (Docket # 45) ¶ 10. In 2008, Plaintiff took and passed a competitive examination for the title of Senior Court Clerk. Pl.'s Response ¶ 4. All Senior Court Clerks, regardless of whether they are assigned to a judge in a court part, a court attorney referee in a court part, or court offices are pay grade JG21 on Defendant's salary scale. Id. ¶ 8.

---

[1]The parties have consented to my exercise of jurisdiction over this matter pursuant to 28 U.S.C. § 636(c). Docket # 19.

A person must take and pass an examination in order to qualify for a competitive promotional position to either the Associate Court Clerk title (pay grade JG23) or the Principal Court Clerk title (pay grade JG26). Id. ¶ 12.

Plaintiff was hired as a probationary Senior Court Clerk in the Orange County Family Court in November, 2010, and remained in that court until November, 2011. Id. ¶ 14; see Pl.'s Decl. ¶¶ 16, 49. During that time, Elizabeth Holbrook was the Chief Clerk of the Orange County Family Court with responsibility for day-to-day operations and overall supervisory responsibility for all non-judicial personnel. Pl.'s Response ¶ 15. Lynne McKelvey was the Deputy Chief Clerk of the Orange County Family Court at that time and had supervisory responsibility over subordinate employees, including Plaintiff. Id. ¶ 16. On November 1, 2011, Plaintiff attended a meeting with Holbrook and McKelvey at which she was told that she had not passed her probationary period for becoming a permanent Senior Court Clerk. Pl.'s Decl. ¶¶ 39-40. During the meeting, Holbrook asked Plaintiff if English was her second language. Pl.'s Response ¶ 29. Holbrook told Plaintiff that she could either have her probation extended for another six months or be returned to her Court Officer position. Id. ¶ 30. Although Plaintiff agreed to an additional six months of probation, it appears that this offer was withdrawn, and Plaintiff would be returned to her Court Officer position. Id. ¶¶ 31-32; see Pl.'s Decl. ¶ 49 ("Sometime after I left the meeting with Holbrook and McKelvey, I was contacted by one or both of them and advised that it was not possible to extend my probation and that my probationary appointment would instead be terminated and that I would be returned to my previous position as a Court Officer.").

On November 1, 2011, Plaintiff contacted the New York State Office of Court Administration Office of the Managing Inspector General for Bias Matters ("MIG") to complain about Holbrook questioning whether English was Plaintiff's second language. Pl.'s Response ¶

35.[2] Holbrook admitted asking the question, and the MIG found that Holbrook had done so. Id. ¶¶ 37-38.

About a week after the events of November 1, 2011, Plaintiff was contacted by the District Executive for the Ninth Judicial District,[3] Nancy Mangold, and was asked to rescind her resignation from the Senior Court Clerk position. Id. ¶ 33. Plaintiff did so and was assigned to the Orange County Supreme and County Court, Criminal Division, again in a probationary status. Id. ¶ 34; Pl.'s Decl. ¶ 59 ("Following the rescission of my resignation I was reinstated and assigned to the criminal division, County Court, Orange County, as a probationary Senior Court Clerk.").

Plaintiff completed her second probationary period and became a permanent Senior Court Clerk in June, 2012. McKelvey Aff. (Docket # 37) ¶ 39; Pl's Decl. ¶¶ 59-60. At that time, Plaintiff was assigned to the Criminal Division as a back-up clerk to all three Orange County Court parts. Pl.'s Response ¶ 41; see Pl.'s Decl. ¶ 62 ("In the criminal division I initially worked in the criminal back office, primarily assigned to intake duties; later, I began working as a back-up part clerk."); Wheeler Decl. (Docket # 42) Ex. 1 ("Pl.'s Depo.") at 94:14-25 ("Q. When you served as backup to the part clerks, would that have been to all of the part clerks in the county, in the criminal division, County Court? A. Yes. Q. Do you recall how many judges? A. Three."). McKelvey became Chief Clerk of the Orange County Supreme and County Court

---

[2]Although the parties rely on Evans Aff. Ex. G in agreeing that Plaintiff complained to the MIG on November 1, 2011, that document, the confidential investigation report, states that the Chief of Staff requested that the MIG conduct an investigation into Plaintiff's complaint on November 21, 2011. Evans Aff. Ex. G at 2. In addition, Plaintiff states in her declaration that she contacted the MIG to lodge her complaint on November 2, 2011. Pl.'s Decl. ¶ 56.

[3] The Ninth Judicial District includes the Orange County Supreme and County Court. http://ww2.nycourts.gov/courts/9jd/orange/index.shtml (last visited 02/05/2020).

on May 1, 2013, subject to a one-year probationary period. Pl.'s Response ¶ 42; Pl.'s Decl. ¶ 63 ("In or about May 2013, Lynn McKelvey was promoted to Chief Clerk, Orange County Supreme and County Court, subject to a one (1) year probationary period.").[4] Plaintiff had little or no interaction with McKelvey between 2013 and 2014. Pl.'s Response ¶ 47.

During this time, as a Senior Court Clerk in the Criminal Division, Plaintiff handled tasks related to bail, appeals, motions, fines, the intake window, and mail; in addition, she dealt with probation officers, the District Attorney's office, and assigning indictments. Id. ¶ 49; Pl.'s Depo. at 90:7-91:19. Plaintiff also served as a back-up part clerk to the three County Court Judges on the days that their part clerks were out. Pl.'s Response ¶ 49. In 2014, McKelvey began rotating Plaintiff to various part assignments, including to the Integrated Domestic Violence (IDV) part. Id. ¶ 50; Pl.'s Depo. at 96:2-12. The IDV part is a specialized part in the Supreme Court which hears matters only one day a week. Pl.'s Response ¶ 51. Plaintiff was supervised in the IDV part by Associate Court Clerk Antonia Chaparro, who had a higher title than Plaintiff. Id. On the days when Plaintiff was not working in the IDV part, she worked as a criminal intake clerk. Pl.'s Depo. at 98:21-99:13.

In September, 2014, Chaparro asked to be removed from the IDV part and told McKelvey that Plaintiff was capable of handling the IDV part. Pl.'s Response ¶¶ 52-53. Initially, Chaparro and McKelvey decided that Plaintiff needed to have some retraining, but after about a month, Plaintiff was removed from the IDV part by McKelvey. Id. ¶ 55. At that point,

---

[4]In its Rule 56.1 statement Defendant cites Complaint ¶ 20 as evidence of the fact that McKelvey became Chief Clerk on May 1, 2013, but her deposition testimony was that she became Chief Clerk in May, 2012. See Wheeler Decl. Ex. 2 ("McKelvey UCS Depo.") at 9:4-7. In the affidavit submitted in support of this motion, however, McKelvey states that she became Chief Clerk in 2013. McKelvey Aff. ¶ 41. McKelvey nowhere mentions being subject to a probationary period.

Plaintiff resumed her duties as a criminal intake and substitute part clerk in the Criminal Division. Id.; see Pl.'s Decl. ¶ 67 ("After McKelvey removed me from IDV, I resumed my general duties in the criminal division.").

A part clerk position became available in December, 2014, in the part presided over by Judge Elaine Slobod, a justice of the Orange County Supreme Court, Civil Division, as a result of the retirement of her previous part clerk. Pl.'s Response ¶ 61. At the time, Senior Court Clerk Christopher Beck was the only Senior Court Clerk assigned to the civil back office. Id. ¶ 62. Defendant claims that Judge Slobod chose Beck to be her part clerk, id.; see McKelvey Aff. ¶ 70, while Plaintiff claims that McKelvey assigned Beck to serve as Judge Slobod's part clerk. Pl.'s Response ¶ 184.[5] Beck, a non-Hispanic white male, had been a probationary Senior Court Clerk in the Civil Division back office for six or seven months when he was assigned to serve as Judge Slobod's part clerk. Id. ¶ 185; Wheeler Decl. Ex. 3 ("McKelvey Depo.") at 41:10-42:9. Plaintiff states that at the time, she was working in the Criminal Division back office and was available for that assignment. Pl.'s Response ¶ 186.

In January, 2015, Plaintiff filed an internal complaint with the MIG, alleging, among other things, race and national origin discrimination by McKelvey based on not receiving a permanent court part clerk assignment even though Plaintiff had been waiting for three years to get one. Evans Aff. (Docket # 36) Exs. K, L. Plaintiff acknowledged to the MIG that she never requested or expressed any interest to McKelvey in being assigned to a permanent part clerk position. Pl.'s Response ¶ 65. On May 6, 2015, the MIG Investigator provided a report to the

---

[5]Defendant incorrectly cites paragraph 78 (instead of paragraph 70) of McKelvey's affidavit in paragraph 62 of its Rule 56.1 statement. Interestingly, Plaintiff cites paragraph 62 of Defendant's Rule 56.1 statement in making her contrary assertion.

MIG regarding the results of the investigation into Plaintiff's complaint. Evans Aff Ex. K. On July 27, 2015, the Hon. Michael V. Coccoma, Deputy Chief Administrative Judge of Courts Outside New York City, informed Plaintiff of his determination, based on the evidence in the MIG report and the recommendation of Judge Scheinkman,[6] that Plaintiff's complaint was unsubstantiated. Wheeler Decl. Ex. 22. Also on July 27, 2015, McKelvey assigned Plaintiff to the Foreclosure Conference Part of the Orange County Supreme and County Court ("Foreclosure Part"), which is presided over by a court attorney referee. Pl.'s Depo. at 128:5-9 (citing Compl. ¶ 36); Pl.'s Response ¶¶ 69-70; see McKelvey Aff. ¶¶ 72-74.[7] The court attorney referee was having problems with the person assigned to the part prior to Plaintiff. Pl.'s Response ¶ 72. Although Plaintiff points out that the person staffing the Foreclosure Part prior to her was a Court Assistant (JG16), Pl.'s Decl. ¶ 80, she admits that other Senior Court Clerks have been assigned to the Foreclosure Part. Pl.'s Response ¶ 73.

In either June or July, 2016, McKelvey assigned Plaintiff to serve as part clerk in the Civil Division to Justice Gretchen Walsh, a newly elected judge in the Orange County Supreme and County Court; the prior part clerk had retired. Pl.'s Depo. at 137:12-138:4 (assigned to Judge Walsh in June, 2016); 141:5-142:5 (assigned to Judge Walsh in July, 2016). Plaintiff and Defendant agree that Plaintiff took an approved two-week vacation in July, 2016, but they

---

[6]Judge Scheinkman was the administrative judge of the Ninth Judicial District. McKelvey UCS Depo. at 75:3-4; Pl.'s Depo. at 202:11-14.

[7]There is evidence in the record, however, that Plaintiff was assigned to the Foreclosure Part approximately two weeks prior, on July 10, 2015. See Wheeler Decl. Ex. 40 (Defendant's March 1, 2016, submission to EEOC) at 4 (Plaintiff began working in the Foreclosure Part on July 10, 2015); Wheeler Decl. Ex. 42 (Pl.'s EEOC rebuttal submission) at Ex. 10 (Email from McKelvey on Wednesday, July 8, 2015, at 9:08 AM, stating that Plaintiff should be moved into the Foreclosure Part "by noon on Friday [July 10]").

dispute whether this happened before or after Plaintiff was assigned to Judge Walsh and therefore whether Plaintiff should have informed Judge Walsh about her vacation, which she failed to do. Pl.'s Response ¶¶ 76-77.[8] After returning from her vacation, Plaintiff worked for two weeks and then took a medical leave on July 24, 2016, from which she did not return until October 29, 2016. Id. ¶ 78. While Plaintiff was out on medical leave, in August, 2016, Senior Court Clerk Lois Kouroumousis from Westchester County was assigned to serve as Judge Walsh's part clerk. Id. ¶ 80. Shortly before Plaintiff's return from her medical leave, McKelvey spoke to Judge Walsh about whether she wanted Plaintiff or Kouroumousis to be her part clerk, and Judge Walsh chose Kouroumousis. Id. ¶¶ 81-82.

Thereafter, in October, 2016, a part clerk position became available in the Civil Division for Justice Catherine Bartlett, due to the retirement of her part clerk. Id. ¶ 83.[9] Plaintiff and Senior Court Clerk Alison McKenzie, who worked in both the civil and criminal court offices, were available to fill the post. Id. ¶ 84.[10] According to Defendant, Judge Bartlett selected McKenzie. Id.[11] According to Plaintiff, McKenzie was assigned (by McKelvey) as Judge Bartlett's part clerk. Pl.'s Decl. ¶ 89. In December, 2016, a Senior Court Clerk position became available in Surrogate Robert Onofry's part. McKelvey Aff. ¶ 79. Judge Onofry was both the

---

[8] As noted above, during her deposition Plaintiff contradicted herself about when she was assigned to Judge Walsh, at first saying it happened in June, 2016, which is what she alleged in her Complaint, see Compl. ¶ 40, and then saying it happened in July, 2016.

[9] Defendant incorrectly cites paragraph 88 of McKelvey's affidavit in paragraph 83 of its Rule 56.1 statement. The correct citation is paragraph 78 of McKelvey's affidavit.

[10] Again Defendant incorrectly cites paragraph 88 of McKelvey's affidavit in paragraph 84 of its Rule 56.1 statement. The correct citation is paragraph 78 of McKelvey's affidavit.

[11] Plaintiff objects that "[t]o the extent offered for the truth of the matter asserted, any expression by Judge Bartlett to McKelvey of her selection of clerk is inadmissible hearsay." Pl.'s Response ¶ 84.

Orange County Surrogate and an acting Supreme Court Justice, handling a sixty percent civil case load. Pl.'s Response ¶ 85. McKelvey told Judge Onofry that there were two Senior Court Clerks available for the position, Plaintiff and Marcelo Adiong, a Senior Court Clerk who was a licensed attorney and who had recently transferred to Orange County. McKelvey Aff. ¶ 80. Judge Onofry selected Adiong. Id.[12]

In June, 2017, Justice Maria Vazquez-Doles, an Orange County Supreme Court judge who handled civil cases, was looking for a new part clerk. Plaintiff and Kouroumousis, who had served as Judge Walsh's part clerk, were the two available Senior Court Clerks at that time. Pl.'s Response ¶ 92; McKelvey Aff. ¶¶ 83-86. Judge Vazquez-Doles selected Plaintiff. Pl.'s Response ¶ 92. Judge Vazquez-Doles had been elected to the bench to a term starting in January, 2014, but McKelvey had assigned Senior Court Clerk Liz Kelne to be her part clerk at that time. Id. ¶¶ 87-88; McKelvey Aff. ¶¶ 81-82. In April, 2014, McKelvey assigned Senior Court Clerk Trisha Rittenhouse to replace Kelne as Judge Vazquez-Doles' part clerk. Pl.'s Response ¶ 88; McKelvey Aff. ¶ 82. Rittenhouse was in the position until she was removed in June, 2017, id. ¶ 90; McKelvey Aff. ¶ 84, and replaced by Plaintiff. To this day, Plaintiff remains in her position of part clerk to Judge Vazquez-Doles. Pl.'s Decl. ¶ 95.

## DISCUSSION

### I. Standard for Summary Judgment

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[12]Plaintiff objects that "[t]o the extent offered for the truth of the matter asserted, any expression by Judge Onofry to McKelvey of his selection of clerk is inadmissible hearsay." Pl.'s Response ¶ 86.

law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986).

> Upon any motion for summary judgment pursuant to Rule 56 of
> the Federal Rules of Civil Procedure, there shall be annexed to the
> notice of motion a separate, short and concise statement, in
> numbered paragraphs, of the material facts as to which the moving
> party contends there is no genuine issue to be tried. Failure to
> submit such a statement may constitute grounds for denial of the
> motion.

Local Civ. R. 56.1(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 250. The inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact. Id.

Under Local Rule 56.1(b), the papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried. Local Civ. R. 56.1(b). Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in original). If the party opposing summary judgment does not respond to the motion, the court may "grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

However, even where the nonmoving party fails to respond to a motion for summary judgment, the court

> may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)) (emphasis in original).

Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2. Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

## II.    **Application of Legal Standard**

### A.    **Untimeliness of Discrimination and Retaliation Claims as Related to Events in 2011**

Defendant argues that Plaintiff's claims, insofar as they relate to events that occurred in 2011, should be dismissed because (1) Plaintiff has failed to exhaust her administrative remedies with respect to such claims, and (2) they are time-barred. Def.'s Mem. of Law (Docket # 40) at 7-8. The Court addresses the issue of timeliness first.

In order to be timely, a charge must be filed with the EEOC within 300 days of the

complained-of act. 42 U.S.C. § 2000e-5(e)(1); see Duplan v. City of New York, 888 F.3d 612, 621-22 (2d Cir. 2018) ("[A] Title VII plaintiff generally must file a charge of discrimination with the EEOC 'within three hundred days after the alleged unlawful employment practice occurred,' 42 U.S.C. § 2000e-5(e)(1) . . ..")[13]; Hurtgam v. Lydonville Cent. Sch., 446 F. App'x 385, 386 (2d Cir. 2011) (summary order) (a plaintiff is "required to file a charge of discrimination or retaliation with the United States Equal Employment Opportunity Commission within 300 days of the discriminatory or retaliatory act.") (internal quotation marks, brackets, ellipses, and citation omitted). Plaintiff filed her complaint with the EEOC on October 15, 2015, Wheeler Decl. Ex. 39, and therefore, only acts of discrimination or retaliation occurring on or after December 19, 2014, are actionable. Defendant states, albeit with an erroneous date, that "[u]nder the 300-day rule, any alleged acts of discrimination occurring prior to December **18,** 2014 are not actionable and should be dismissed as a matter of law." Def.'s Mem. of Law at 8 (emphasis added) (footnote omitted). Accordingly, although the parties focus their arguments on the allegations concerning acts of discrimination that occurred in 2011, which are unquestionably time-barred, some of the other alleged acts of discrimination and retaliation about which Plaintiff complains occurred outside the 300-day limitations period and are time-barred as well: (1) Plaintiff's removal from the IDV part, which occurred in October, 2014, and (2) the failure to assign Plaintiff to Judge Vazquez-Doles in January, 2014, and April, 2014.

Plaintiff contends that her discrimination claims are not time-barred because the conduct about which she complains constitutes a continuing violation. Mem. of Law in Opp'n (Docket #

---

[13]The Second Circuit noted that "[t]he three-hundred-day look-back period is in fact an extended period that Title VII affords to plaintiffs complaining about conduct that occurred in a state with its own antidiscrimination enforcement mechanisms, which includes New York." Duplan, 888 F.3d at 621 n.7.

11

47) at 4-5. "Under the continuing violation exception to the Title VII limitations period—a disfavored principle—if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, [then] all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." <u>Flores v. Entergy Nuclear Operations, Inc.</u>, 313 F. Supp. 3d 511, 524-25 (S.D.N.Y. 2018) (internal quotation marks and citations omitted), <u>aff'd</u>, 768 F. App'x 139 (2d Cir. 2019), <u>cert. denied</u>, — S. Ct. — , 2019 WL 5686498 (Nov. 4, 2019). "[T]he 'continuing violation exception' applies only where a plaintiff alleges an 'ongoing policy' of related discrimination, rather than cases of '<u>discrete</u> acts of discrimination or retaliation that occur outside the statutory time period, even if other acts of discrimination occurred within the statutory time period.' " <u>Flores</u>, 768 F. App'x at 140 (citation omitted) (emphasis in original). Here, to the extent that Plaintiff's discrimination and disparate treatment claim is based on the events that occurred in 2011, the continuing violation doctrine does not save it from being untimely. Although Plaintiff contends that these allegations are part of "the ongoing refusal by Defendant to assign her to an in-part Senior Court Clerk assignment," Mem. of Law in Opp'n at 4, there are no allegations concerning any such "ongoing refusal" during the entire period of 2012 through September, 2014.[14] <u>See, e.g.</u>, Pl.'s Decl. ¶¶ 59-63; <u>see also</u> Pl.'s Depo. at 88:15-93:8 ("Q. . . . And between 2011 and 2013, did you have any more dealings with Lynn McKelvey? A. No. . . . Q. What were your interactions with [McKelvey] between 2013 and 2014? A. Um, I believe once she asked me to come into her office, asking me about – she asked me a question and then I gave her an answer. And – and that was the end."); <u>see also</u> Pl.'s

---

[14]Although Plaintiff refers to the "ongoing refusal by Defendant," <u>i.e.</u>, the New York State Unified Court System, she only complains about McKelvey's conduct.

12

Response ¶ 47 (Plaintiff admitted that she had "little or no interaction with McKelvey between 2013-2014.").[15]

To the extent that Plaintiff argues that her claims as they pertain to the events of 2011 are properly before the Court as "reasonably related" to the claims as presented to the EEOC, Mem. of Law in Opp'n at 2-4, such argument fails as well. "The 'reasonably related' doctrine does not toll the statute of limitations, nor does it make timely claims that would otherwise be untimely." Trujillo v. City of New York, 14 Civ. 8501 (PGG), 2016 WL 10703308, at *7 (S.D.N.Y. Mar. 29, 2016), aff'd, 696 F. App'x 560 (2d Cir. 2017); see Oshinsky v. New York City Hous. Auth., No. 98 CIV 5467 AGS, 2000 WL 218395, at *6 n.3 (S.D.N.Y. Feb. 23, 2000) ("[E]ven those district courts that apply the 'reasonably related' rule to acts predating the EEOC filing would concede that the 'reasonably related' rule is inapplicable . . . to conduct that predates the filing of the EEOC complaint by so much time that it is outside the limitations period for filing EEOC complaints, which . . . is 300 days."). The acts that occurred in 2011 are well outside the 300-day limitations period and are therefore not actionable.

**B.    Discrimination and Disparate Treatment under Title VII**

Plaintiff claims that she suffered discrimination and disparate treatment based on her race and national origin in violation of Title VII. "It is unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.' " Haughton v. Town of Cromwell,

---

[15]Plaintiff testified during her deposition that McKelvey made her assignments from 2013 to 2014 and 2014 to 2015. Pl.'s Depo. at 94:10-13. Nonetheless, as noted above, she testified to virtually no interaction with McKelvey during the period of 2013-2014.

735 F. App'x 27 (2d Cir. 2018) (summary order) (quoting 42 U.S.C. § 2000e-2(a)(1)). "At the summary-judgment stage, properly exhausted Title VII claims are ordinarily analyzed under the familiar burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973), and its progeny." <u>Mathirampuzha v. Potter</u>, 548 F.3d 70, 78 (2d Cir. 2008). "At the first stage of the <u>McDonnell Douglas</u> analysis, the plaintiff bears the burden of establishing a <u>prima facie</u> case of discrimination by showing that: 1) he [or she] belonged to a protected class; 2) he [or she] was qualified for the position; 3) he [or she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." <u>Id.</u> (internal quotation marks and citation omitted). "The plaintiff's burden of proof at the <u>prima facie</u> stage is not onerous." <u>Id.</u> (internal quotation marks and citation omitted). "[O]nce a plaintiff has established a <u>prima facie</u> case, the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions." <u>Terry v. Ashcroft</u>, 336 F.3d 128, 138 (2d Cir. 2003). "[O]nce the defendant has made a showing of a neutral reason for the complained of action, to defeat summary judgment the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." <u>Id.</u> (internal quotation marks, ellipsis, and citation omitted).

Here, with respect to Plaintiff's <u>prima facie</u> case, the parties dispute whether Plaintiff suffered an adverse employment action, as well as whether any alleged adverse employment actions occurred under circumstances giving rise to an inference of discriminatory intent.

"An adverse employment action is a materially adverse <u>change</u> in the terms and conditions of employment." <u>Mathirampuzha</u>, 548 F.3d at 78 (internal quotation marks and

citation omitted) (emphasis in original). "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (citation omitted). "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. (citation omitted).

Plaintiff complains of the following adverse employment actions: (1) being rotated from assignment to assignment in the Family Court, Compl. ¶¶ 13-14; Mem. of Law in Opp'n at 7-8; (2) being forced to complete a second probationary period, Mem. of Law in Opp'n at 8[16]; and (3) being removed from the IDV part, assigned to the Foreclosure Part, and not being assigned to Judges Slobod, Bartlett, and Vazquez-Doles, Compl. ¶¶ 21-26, 36-39; Mem. of Law in Opp'n at 9-10.[17] The rotation among assignments in the Family Court occurred during the period of November, 2010, to November, 2011; the imposition of a second probationary period occurred in November, 2011, see Wheeler Decl. Ex. 13; the failure to assign Plaintiff to Judge Vazquez-Doles occurred in January and April, 2014; and Plaintiff's removal from the IDV part occurred in October, 2014. Consequently, as explained in Section II.A., supra, these employment actions are not actionable on the ground of untimeliness. The Court therefore proceeds to address the alleged adverse employment actions that are not time-barred.[18]

---

[16]This adverse employment action is not alleged in the Complaint.

[17]There are no allegations in the Complaint concerning the failure to assign Plaintiff to Judge Vazquez-Doles in 2014.

[18]Although Plaintiff was passed over for assignment as Judge Bartlett's part clerk in October, 2016, long after Plaintiff filed her EEOC charge, neither party addresses whether a claim based on this alleged adverse employment action is reasonably related to the claims raised in the EEOC charge such that it satisfies the administrative exhaustion requirement. For purposes of this

## 1. Being Assigned to the Foreclosure Part

McKelvey assigned Plaintiff to the Foreclosure Part in July, 2015. "[A]n involuntary transfer may constitute an adverse employment action if the plaintiff shows that the transfer created a materially significant disadvantage with respect to the terms of [his or] her employment." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004) (internal quotation marks, brackets, and citation omitted). "[A] transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 641 (2d Cir. 2000), abrogated on other grounds as recognized in Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 43-44 (2d Cir. 2019) (explaining that a different standard for "adverse employment action" applies to retaliation claims). In other words, a transfer creates a "materially significant disadvantage" when it is "to an assignment that [is] materially less prestigious, materially less suited to [a plaintiff's] skills and expertise, or materially less conducive to career advancement." Id. at 641. As one district court explained, "The key inquiry regarding involuntary transfers is whether the transfer constitutes a negative employment action tantamount to a demotion." Patrolmen's Benevolent Ass'n v. City of New York, 74 F. Supp. 2d 321, 335 (S.D.N.Y. 1999) (internal quotation marks and citation omitted). "[I]f an employee earns the same salary, has the same benefits, works the same hours and has the same opportunities for promotion following a transfer then there is no adverse employment action." Watson v. Paulson, 578 F. Supp. 2d 554, 564 (S.D.N.Y. 2008) (internal quotation marks and ellipses omitted), aff'd sub nom. Watson v. Geithner, 355 F. App'x 482 (2d Cir. 2009). "The receipt of undesirable assignments must be

_____

motion, the Court assumes that it is.

accompanied by a material detriment to an employee's working conditions to constitute an adverse employment action. A plaintiff's subjective dissatisfaction with the work assigned, absent some evidence that the assignment materially worsened [his or] her working conditions, is insufficient to make out an adverse employment action." Jean-Pierre v. Citizen Watch Co. of Am., Inc., 18-CV-0507 (VEC), 2019 WL 5887479, at *7 (S.D.N.Y. Nov. 12, 2019) (internal quotation marks, brackets, and citations omitted); see also Williams, 368 F.3d at 128 ("[S]ubjective, personal disappointments do not meet the objective indicia of an adverse employment action.") (citation omitted); Watson, 578 F. Supp. 2d at 563 ("A transfer that is truly lateral and involves no significant changes in an employee's conditions of employment is not an adverse employment action regardless of whether the employee views the transfer negatively.").

Plaintiff argues that the Foreclosure Part constitutes a "materially adverse assignment." Mem. of Law in Opp'n at 9. She testified at her deposition that the Foreclosure Part was less prestigious because it "is located in what used to be a storage room full of boxes, and it is basically a closet. . . . There is no judge, no court reporter. There is [sic] no orders to be done. . . . There was nothing to do in the foreclosure part other than to calendar cases." Pl.'s Depo. at 128:10-129:12. Plaintiff also testified that before she worked in the Foreclosure Part, it was staffed by a court clerk who was at a lower pay grade than Plaintiff, and before that, it was staffed by a secretary, who was also at a lower pay grade. Id. at 135:19-137:2. However, Plaintiff concedes that two other Senior Court Clerks have been assigned to the Foreclosure Part, one of whom, Marcelo Adiong, was assigned to the Foreclosure Part right after Plaintiff. Pl.'s Response ¶ 73; Wheeler Decl. Ex. 4 ("Adiong Depo.") at 5:23-6:4; 28:16-29:2.

Plaintiff cites Adiong's deposition testimony as well regarding the change in responsibilities. Adiong described working in the Foreclosure Part as being "a scrivener. Like

17

working not really as a part clerk, just working as an office clerk. Basically you just type in letters which are already being prepared, send those letters out, put it in an envelope, make copies. It's basically if you are an office clerical worker." Id. at 24:6-12. Adiong explained that in other parts he had worked in—IAS (individual assignment system) and DCM (differentiated case management)—the work of a Senior Court Clerk was "totally different . . . you do have some sort of limited discretion like you do calendars and you do the schedule, marking those calendars, swearing in people, the juries, taking in exhibits and you also interact with attorneys." Id. at 26:19-27:3. Adiong stated that in those other parts he also interacted with sitting judges, id. at 27:4-6, and explained,

> That normally is the difference that you have to work with the judge, the attorneys, you have to work with other court personnel, what you call that, the operations by the court security because you have to make sure that when the court is functioning that court personnel, the judges themselves, all court users are well protected and so you have to get involved in that. In the foreclosure part it's just different. You are being like isolated from the concept of how the court should operate or things like that. In fact, the foreclosure part doesn't have designated security.

Id. at 28:1-14. Adiong added that in the Foreclosure Part, there is a computer-generated calendar and although "there should be a calendar call, . . . the practice is we just bring them in as they arrive." Id. at 42:7-19. There is a sign-in sheet, and Adiong calls the parties' names once both parties arrive, and the parties then "conference with a court attorney referee." Id. at 42:20-43:15. During the conferences with the attorney referee, Adiong writes letters, checks his voicemail, and checks the e-filing to see if new cases have been filed. Id. at 43:16-20. Adiong stated that he could not say how many cases are on the Foreclosure Part calendar on average on a daily basis, but he said that it "is a busy part." Id. at 44:4-17.

The Title Standards for the position of Senior Court Clerk provides a list of "Typical

18

Duties," which includes the following:

Prepares, calls and annotates the court calendar.

. . .

Records and maintains records of court proceedings.

Examines court documents to ensure their accuracy, completeness and legal sufficiency.

Contacts attorneys or parties to the case by note, telephone, or letter if submitted documents and forms do not comply with statutes or procedures.

Prepares orders, warrants, decrees, summonses, conditional discharges, violations of probation and other court forms to be submitted to the Judge for signature.

Communicates with outside agencies such as the police, probation, defense attorneys and mental health clinics in order to coordinate the court's activities with said agencies.

Answers telephone and over-the-counter inquiries from attorneys, judges, parties to the case, the public and court personnel regarding court procedures and the filing of court documents.

Discusses daily court activities (scheduling of cases, calling of calendar, etc.) with the Judge.

. . .

Interprets orders, decisions, judgments, pleadings and motions to determine the directives of judges and the reliefs sought by attorneys and parties to the case.

. . .

Gathers the documents pertaining to a case and places these in a file in order to create and maintain an accurate and permanent record of each case.

Compiles statistical information such as the number of cases pending, the number of cases handled by a particular court part or trial term, calendar entries, fines paid, etc., by entering information on the appropriate

statistical tally sheets.

Evans Aff. Ex. D. The Title Standards notes at the bottom of the document, following the list of typical duties, that "*[t]he above statements are intended to describe the general nature and level of work being performed by persons assigned to this title. They do not include all job duties performed by employees in this title, and every position does not necessarily require these duties.*" Id. (italics in original). Thus, although the Foreclosure Part differed from other parts, and the tasks that a Senior Court Clerk in that part had to perform were different from those in other parts, those tasks were still within the realm of what a Senior Court Clerk could be expected to do, and "every position does not necessarily require these duties."

"Changes in assignments or responsibilities that do not radically change the nature of work are not typically adverse employment actions." Potash v. Florida Union Free Sch. Dist., 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) (internal quotation marks, brackets, and citation omitted). "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Mathirampuzha, 548 F.3d at 78 (citation omitted); Jean-Pierre, 2019 WL 5887479, at *7 (S.D.N.Y. Nov. 12, 2019) ("The receipt of undesirable assignments must be accompanied by a material detriment to an employee's working conditions to constitute an adverse employment action.") (internal quotation marks, brackets, and citation omitted). "Moreover, a plaintiff must set forth objective proof that the alleged action was materially adverse." Potash, 972 F. Supp. 2d at 584 (citation omitted) (emphasis in original).

There is no evidence in the record that being assigned to the Foreclosure Part was in any way materially disadvantageous to Plaintiff. Although Plaintiff contends that "part clerk experience is viewed as an asset in a promotional interview," Mem. of Law in Opp'n at 7, she

testified at her deposition that even with her assignment to the Foreclosure Part appearing on her resume, Plaintiff still obtained interviews for promotion to deputy chief clerk positions. See Pl.'s Depo. at 132:25-133:10 ("Q. Tell me the promotional opportunities that . . . you applied for? A. Um, deputy chief clerk in Putnam, Poughkeepsie and Schenectady. . . . Actually there may be more but those are the ones that I did have interviews with.").[19] Additionally, Plaintiff contends that "because McKelvey has left the selection of in-part clerks up to the judges, who make their choices based on a clerk's background and experience and because my assignment to the foreclosure conference part gave me less experience doing the work of a traditional in-part clerk, I would be viewed by a judge as a less experienced candidate for a part clerk position." Pl.'s Decl. ¶ 84. However, this is no more than Plaintiff's conjecture, unsupported by any evidence in the record. See Pl.'s Depo. at 131:18-132:7 ("A. . . . [W]hen you go to an interview for a promotional, um, position, and you tell the panel that you work with a court referee, it is not very, um, it is not something that when you go to these promotional jobs, that it is likely to make you seem as someone that, um, is worthy of a position as a clerk working in a non-judge part, working with a referee. And you put that on your resume that you're working with a referee, it's not as allusive [sic] as I worked with Judge Slobod. Q. Has someone told you that? A. No.").

Similarly, Plaintiff's assertion that "the stigma associated with the assignment is underscored by its apparent use by McKelvey as a punishment for poor performance, (Pl. Facts ¶ 201), and reputation as a 'dumping ground' for otherwise unplaceable employees, (DJH Tr. 130:1-10)," Mem. of Law in Opp'n at 10, is based on no more than Plaintiff's own surmise and

---

[19]Plaintiff also testified that she took the promotional exam for the position of Associate Court Clerk "four years ago," which would have been 2014 or 2015, but she failed, and that she took it again "recently" but "ha[d] not received the score yet." Pl.'s Depo. at 134:23-135:14.

subjective opinion. Plaintiff's claim that placement in the Foreclosure Part was "punishment for poor performance" was not based on her own placement there, which she does not claim came in response to allegations that she was performing poorly, but rather on Adiong's placement there following a negative evaluation of his performance as Judge Onofry's part clerk, see Adiong Depo. at 12:16-13:2, 14:7-12, 21:3-19, 22:3-23:10, which occurred after Plaintiff left the Foreclosure Part. Pl.'s Response ¶ 200. It is, therefore, no more than speculation by Plaintiff. As for the claim that the Foreclosure Part had the reputation as a "dumping ground" for "unplaceable employees," Plaintiff relies on nothing more than her own deposition testimony and, as noted above, Plaintiff likewise testified that working in the Foreclosure Part did not prevent her from obtaining promotional interviews (nor did it prevent her from being placed with Judges Walsh or Vazquez-Doles).[20]

In sum, although Plaintiff was subjectively dissatisfied with her placement in the Foreclosure Part, this alone fails to establish that it constituted an adverse employment action. Potash, 972 F. Supp. 2d at 584 ("[A] plaintiff must set forth objective proof that the alleged action was materially adverse.") (citation omitted) (emphasis in original).

### 2. Not Being Assigned to Judges Slobod and Bartlett

Plaintiff also claims that she suffered adverse employment actions in being passed over for assignment to part clerk positions with Judges Slobod and Bartlett. However, the only evidence that she cites to support her claim that these constituted adverse employment actions is

---

[20]Indeed, telephone directories submitted to the Court by Plaintiff, spanning the period from April 30, 2014, to May 3, 2016, show that the other Senior Court Clerk who had been assigned to the Foreclosure Part, Peggy Ciarimboli, was serving as a part clerk during that period, first to Judge Colangelo and then to Judge Bartlett, until Ciarimboli herself retired. See Wheeler Decl. Exs. 23-28; McKelvey Depo. at 71:8-15.

the declaration of Associate Court Clerk Antonia Chaparro, in which she states, "It is further my experience that part clerk assignments are generally viewed by Senior Court Clerks as the most prestigious available to them and are generally the most sought after." Chaparro Decl. ¶ 79; see Pl.'s Response ¶ 105 ("Assignment to in-part clerk position are [sic] generally the most sought-after assignment available to a Senior Court Clerk. (Chaparro Dec. ¶ 79.)"). Even if, according to Chaparro (who was not a Senior Court Clerk), Plaintiff and Senior Court Clerks generally viewed part clerk assignments as the most prestigious, and Plaintiff wanted to serve as a part clerk, there is nonetheless no evidence in the record that not getting the part clerk assignments with Judges Slobod and Bartlett was in any way materially disadvantageous to Plaintiff. See Beyer v. Cty. of Nassau, 524 F.3d 160, 164 (2d Cir. 2008) ("A denial of a transfer may also constitute an adverse employment action, but we require a plaintiff to proffer objective indicia of material disadvantage; subjective, personal disappointment is not enough.") (internal quotation marks, brackets, and citation omitted); see also id. ("[Plaintiff] maintains that an adverse employment action occurs whenever an employer denies an employee's request to transfer to a job that is materially and significantly different from the employee's current job. We have never so held. . . . [W]e require objective indicia that the transfer denial 'created a materially significant disadvantage' in the working conditions of the aggrieved employee.") (citation omitted). Indeed, being passed over for those part clerk positions had no negative impact on Plaintiff's career, as she was assigned to serve as Judge Walsh's part clerk in June or July, 2016, and then later assigned to serve as Judge Vazquez-Doles' part clerk in June, 2017, which position she holds to this day. Accordingly, Plaintiff fails to establish that not being assigned to Judges Slobod and Bartlett constituted adverse employment actions.

Because Plaintiff cannot demonstrate that she was subjected to an adverse employment

action, she cannot establish a <u>prima facie</u> case of disparate treatment on account of her race and national origin.[21] Consequently, her claim for discrimination under Title VII fails. <u>See</u> <u>Hoag v. Fallsburg Cent. Sch. Dist.</u>, 279 F. Supp. 3d 465, 479 (S.D.N.Y. 2017) ("Because Plaintiff cannot show she suffered an adverse employment action, and thus cannot establish a <u>prima facie</u> case of disparate treatment on account of her sex, her claims for discrimination under an adverse action theory must fail.").[22]

## C.    Retaliation

Plaintiff also asserts a claim of retaliation in violation of Title VII. "Title VII prohibits employers from retaliating 'against any . . . employee[ ] . . . because [that individual] has opposed any practice' made unlawful by Title VII. 42 U.S.C. § 2000e–3(a)." <u>Ya-Chen Chen v. City Univ. of New York</u>, 805 F.3d 59, 70 (2d Cir. 2015). Title VII retaliation claims are likewise analyzed under the <u>McDonnell Douglas</u> burden-shifting framework. <u>Id.</u> As the Second Circuit has explained,

> Under this framework, the plaintiff bears the initial burden to establish a prima facie case of retaliation by offering evidence that [he or] she

---

[21]Thus, the Court does not reach the issue of whether any of these employment actions occurred under circumstances giving rise to an inference of discriminatory intent.

[22]The parties dispute the extent to which the Court may consider the EEOC's Determination concerning the charges filed by Plaintiff, which found that there was "reasonable cause to believe that [Defendant] violated Title VII of the Civil Rights Act of 1964." Evans Aff. Ex. P. The Court declines to do so and is not obligated to do so under the law of this Circuit. <u>See</u> <u>Green v. Harris Publ'ns, Inc.</u>, 331 F. Supp. 2d 180, 191 (S.D.N.Y. 2004) ("The consideration, if any, to be given to EEOC findings is within the sound discretion of the trial judge.") (citing <u>Paolitto v. John Brown E. & C., Inc.</u>, 151 F.3d 60, 65 (2d Cir. 1998)); <u>Rosenquist v. Ottoway Newspapers, Inc.</u>, No. 00–CV–0802, 2003 WL 25719932, at *12 (N.D.N.Y. Mar. 31, 2003) ("Plaintiff argues that this Court should defer to the EEOC's administrative determination that defendant likely violated the ADA in the present case. This Court will not do so nor is it required to do so pursuant to well-established case law.") (citing <u>Paolitto</u>, 151 F.3d at 65), <u>aff'd</u>, 90 F. App'x 564 (2d Cir. 2004).

24

"participated in a protected activity," "suffered an adverse employment action," and "that there was a causal connection between [him or] her engaging in the protected activity and the adverse employment action." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010). This showing creates a "presumption of retaliation," which the defendant may rebut by "articulat[ing] a legitimate, non-retaliatory reason for the adverse employment action." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). If the defendant provides such an explanation, "the presumption of retaliation dissipates," id., and the plaintiff must prove "that the desire to retaliate was the but-for cause of the challenged employment action." Univ. of Tex. Sw. Med. Ctr. v. Nassar, ——U.S. ——, 133 S. Ct. 2517, 2528, 186 L. Ed. 2d 503 (2013).

Id.

In its motion papers, Defendant contends that Plaintiff cannot establish a prima facie case of retaliation because she did not suffer an adverse employment action, and she cannot establish a causal connection between her protected activity and any adverse employment action. Defendant identifies Plaintiff's protected activity as lodging her MIG complaint in January, 2015, and filing her charge with the EEOC in October, 2015. Def.'s Mem. of Law at 21. Although her 2011 MIG complaint is not mentioned anywhere in the Complaint filed in this action, Plaintiff states in her memorandum of law in opposition that in the context of this claim, her 2011 MIG complaint should also be included as protected activity in which she engaged. Mem. of Law in Opp'n at 21. Plaintiff states in conclusory fashion that "a reasonable factfinder could conclude that previously-identified job actions to which Plaintiff was subjected in County and Supreme Court are each sufficiently adverse for purposes of her retaliation claims," citing the sections of her brief devoted to the adverse employment actions underlying her discrimination claim. Mem. of Law in Opp'n at 22 (citing "§ II(A)(1)(3)"[23]). Thus, the adverse

---

[23]Section II(A)(1) of Plaintiff's memorandum of law in opposition addresses Plaintiff's "Rotation and Assignment in Family Court," Mem. of Law in Opp'n at 7, which preceded her 2011 MIG complaint and therefore cannot constitute adverse employment action undertaken in retaliation

employment actions that Plaintiff claims were retaliatory are her removal from the IDV part, assignment to the Foreclosure Part, and the failure to assign her to Judges Slobod, Bartlett, and Vazquez-Doles. See Mem. of Law in Opp'n at 8-10 (§ II(A)(3)). As explained in Section II.A., supra, Plaintiff's claims related to her removal from the IDV part and the failure to assign her to Judge Vazquez-Doles in 2014 are time-barred. With respect to the failure to assign Plaintiff to Judge Slobod, this occurred in December, 2014, before Plaintiff lodged her 2015 MIG complaint, and Plaintiff makes no argument and presents no evidence that this adverse employment action occurred in retaliation for Plaintiff's 2011 MIG complaint. Accordingly, the Court only considers whether Plaintiff can establish a prima facie case of retaliation based on her 2015 MIG complaint and her EEOC charge and the alleged adverse employment actions of her assignment to the Foreclosure Part and the failure to assign her to Judge Bartlett.

"Title VII's anti-retaliation provision applies broadly to 'employer actions that would have been materially adverse to a reasonable employee or job applicant.' " Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). "Actions are 'materially adverse' if they are 'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.' " Id. (quoting White, 548 U.S. at 57). "Title VII's anti-discrimination and anti-retaliation provisions are not coterminous; anti-retaliation protection is broader and extends beyond workplace-related or employment-related retaliatory acts and harm." Id. (internal quotation marks and citations omitted). "Petty slights or minor annoyances that often take place at work and that all employees experience do not constitute actionable retaliation." Id. (internal quotation marks,

---

for making that complaint.

brackets, and citation omitted). An individual is protected only "from retaliation that produces an injury or harm." Id. (internal quotation marks and citation omitted). Moreover, although the standard is objective, "context matters . . . [and] an act that would be immaterial in some situations is material in others." Id. (internal quotation marks, brackets, and citations omitted). Finally, "the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." Id. (citation omitted).

Plaintiff argues that "[i]n the context of retaliation, Plaintiff's assignment to the foreclosure conference part is particularly concerning and likely to dissuade an exercise of rights," citing paragraphs 83-87 of her declaration. Mem. of Law in Opp'n at 22. However, even under the broader standard applicable to adverse employment actions in the retaliation context, Plaintiff's claim fails. In support of her assertion that her transfer to the Foreclosure Part was an adverse employment action, Plaintiff relies on both the same evidence that she cites in support of her discrimination claim, as well as statements in her declaration, all of which reflect her own subjective opinion that this was "a less desirable assignment" and was "less attractive to supervisors conducting promotional interviews." Pl.'s Decl. ¶¶ 83-87 (cited in Mem. of Law in Opp'n at 22). But, as the Second Circuit has explained, whether an action constitutes an "adverse employment action" is to be considered from "the perspective of a reasonable employee," i.e., an "objective standard." Hicks, 593 F.3d at 165 (emphasis in original) (citing White, 548 U.S. at 68-69). Moreover, as explained in the context of Plaintiff's discrimination claim, there is no evidence that her assignment to the Foreclosure Part negatively impacted Plaintiff's promotional opportunities, and thus, there is no evidence that this action was "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."

Similarly, the failure to assign Plaintiff to Judge Bartlett was not "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." Plaintiff cites no specific evidence regarding how this constituted an adverse employment action in the context of her retaliation claim. Rather, her memorandum of law in opposition only cites the section of her brief regarding her discrimination claim, § II(A)(3), which states, "For the reasons already articulated, a reasonable factfinder could conclude that . . . failure to assign [Plaintiff] to part clerk positions . . . with Judge[] . . . Bartlett . . . constituted an adverse action sufficient for Plaintiff's <u>prima facie</u> obligation [with respect to her discrimination claim]. (<u>See</u> <u>supra</u>, § II(A)(1).)[.]" Mem. of Law in Opp'n at 9. Section II(A)(1) of Plaintiff's brief is entitled, "Rotation and Assignment in Family Court," and discusses how "part clerk experience is viewed as an asset in a promotional interview," citing Plaintiff's own deposition testimony at pages 131:10-132:5. <u>See</u> Mem. of Law in Opp'n at 7-8. That deposition testimony is as follows:

> Q. On what do you base the statement that it is less -- being the part clerk for the foreclosure part is less likely to lead to promotional or advancement opportunities for court employees assigned to it?
> . . .
>
> A. Based on the fact that when you go to an interview for a promotional, um, position, and you tell the panel that you work with a court referee, it is not very, um, it is not something that when you go to these promotional jobs, that it is likely to make you seem as someone that, um, is worthy of a position as a clerk working in a non-judge part, working with a referee.
> And you put that on your resume that you're working with a referee, it's not as allusive [sic] as I worked with Judge Slobod.
>
> Q. Has someone told you that?
>
> A. No.

Pl.'s Depo. at 131:10-132:7. Plaintiff was then asked whether she had "gone on interviews for

deputy clerk positions" with "the foreclosure unit on your resume," and Plaintiff responded that she had gone on such interviews. Id. at 132:8-19. This deposition testimony does not establish that the failure to assign Plaintiff to Judge Bartlett was materially adverse as there is no evidence that it produced any injury or harm. "The antiretaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Hicks, 593 F.3d at 165 (internal quotation marks, brackets, and citation omitted). Furthermore, Plaintiff relies once again on her subjective opinion that being passed over for a part clerk position with Judge Bartlett was materially adverse in that it negatively impacted her promotional opportunities and thus fails to satisfy the "objective standard" applicable to adverse employment actions in the context of retaliation claims.[24]

As with Plaintiff's claim of discrimination, because Plaintiff cannot demonstrate that she was subjected to an adverse employment action, she cannot establish a prima facie case of retaliation, and her claim of retaliation under Title VII fails as well. See Sherman v. Nat'l Grid, 993 F. Supp. 2d 219, 228 (N.D.N.Y. 2014) ("Because plaintiff has failed to identify that she suffered a materially adverse employment action, she has failed to establish a prima facie case of retaliation under Title VII. Accordingly, defendant is entitled to summary judgment on these claims.").[25]

---

[24]The assertion that being passed over for assignment to Judge Bartlett in October, 2016, was a materially adverse employment action that Plaintiff suffered in response to her protected activity rings particularly hollow given that Plaintiff had been assigned to be Judge Walsh's part clerk in June or July, 2016, after having both lodged the MIG complaint and filed the EEOC charge. It is thus hard to see how the failure to assign Plaintiff to Judge Bartlett after she had already been assigned to Judge Walsh could have dissuaded her from exercising her rights.

[25]The Court therefore need not reach the issue of whether a causal connection exists between Plaintiff's protected activity and these alleged adverse employment actions. But in any event, they are both too remote in time from Plaintiff's protected activity to give rise to an inference of

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Docket # 35) is granted, and the action is dismissed. The Clerk of the Court is directed to close the case.

Dated: February 27, 2020
White Plains, New York

**SO ORDERED,**

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

---

causation. Plaintiff filed her second MIG complaint in January, 2015; McKelvey became aware of the complaint by no later than March 9, 2015, when she was interviewed in connection with the MIG investigation, Evans Aff. Ex. K at 5; and Plaintiff was assigned to the Foreclosure Part in July, 2015, four months later. "Courts in this District generally have found two or three months to be the outer limit for establishing causation based on temporal proximity." Jean-Pierre, 2019 WL 5887479, at *16. Plaintiff makes no argument regarding the causal connection between her EEOC charge filed in October, 2015, and the failure to assign her Judge Bartlett in October, 2016, but a year is certainly too remote to establish the requisite temporal proximity. Id.; see also, e.g., D'Andrea v. Nielsen, 765 F. App'x 602, 605 (2d Cir. 2019) ("While we have declined to draw a bright line to define the outer limits beyond which temporal proximity may be established, we have generally held that causation can only be inferred after the passage of a few weeks or months, and have held that a delay of more than a year is fatal to a showing of causation.") (internal quotation marks and citation omitted). Although causation may also be proven "directly through evidence of retaliatory animus directed against the plaintiff by the defendant," D'Andrea, 765 F. App'x at 605 (internal quotation marks and citation omitted), and Plaintiff states that direct evidence of retaliatory animus "can be inferred" from the record in this case, arguing that "a factfinder could further infer such a motive through, inter alia, evidence of McKelvey's discriminatory motives, (see supra, § II(B)(1)), and the patently unbelievable explanations offered to justify Defendant's actions, (supra, Pt. III)," Mem. of Law in Opp'n at 23, Plaintiff does not explain how direct evidence that retaliatory animus motivated either Plaintiff's assignment to the Foreclosure Part or the failure to assign her to Judge Bartlett may be inferred from the evidence she presents of discriminatory motive, and the Court cannot find any such direct evidence in the record.